**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NAIRI GASPARYAN,<br><br>                    Petitioner,<br><br>          v.<br><br>TODD BLANCHE, ATTORNEY GENERAL OF THE UNITED STATES, *ET AL.*,<br><br>                    Respondents. | Case No. 2:26-cv-05139-AYP<br><br>**ORDER GRANTING PETITION AND ISSUING A WRIT FOR HABEAS CORPUS** |

## I.    SUMMARY

Petitioner, Nairi Gasparyan, is a native and citizen of Armenia seeking asylum in the United States who is currently in the physical custody of Respondents at the Desert View Annex, in Adelanto, California. (Dkt. No. 1.) Petitioner entered the United States on April 24, 2024, at the San Ysidro,

California, Port of Entry applying there for admission through *CBP One*. *Id.* at 3. He was paroled and released on humanitarian parole.

Petitioner was arrested and redetained on March 16, 2026. On May 19, 2026, Petitioner filed this Writ of Habeas Corpus under 28 U.S.C § 2241, arguing Respondents detained him without notice and a hearing prior to re-detention thereby violating his due process rights. He seeks an order requiring Respondents to release him from immigration detention. (Dkt. No. 1 at 17.)

In their Answer, Respondents argue that Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(1) or in the alternative 8 U.S.C. § 1226(a). (Dkt. No. 10.) Further they argue the Court does not have jurisdiction to review any removal-related activity and ICE may terminate Petitioner's parole. *Id.*

The Court finds that Petitioner has demonstrated that the Government violated his right to due process by re-detaining him without notice and an opportunity to be heard. The Court therefore grants the Petition and issues a writ of habeas corpus requiring Petitioner's immediate release and preventing his re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to detain him.

## II.   FACTUAL BACKGROUND

Petitioner is a native and citizen of Armenia seeking asylum in the United States. (Dkt. No. 1 at 2.) On April 24, 2024, Petitioner arrived in the United States at the San Ysidro, California, Port of Entry applying there for admission through the Customs and Border Protection ("CBP") CBP One app.[1]

---

[1] The U.S. Customs and Border Protection ("CBP") built a mobile application, CBP One, to enable "aliens without appropriate documents for admission who seek to travel to the United States through certain southwest border land ports of entry (POEs), the ability to submit information through a module within the application instead of coming directly to wait at a POE." *Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *1 n.1 (S.D. Cal. Nov. 24, 2025).

Respondents paroled him based on the individualized facts in his case, under 8 U.S.C. § 1182(d)(5). *Id.* Petitioner's I-94 form states his Class of Admission is "DT" and his Admit Until Date as June 27, 2025. (Dkt. No. 16, Ex. A.) The "DT" class of admission signifies admission for humanitarian reasons. *Margaryan v. Bondi*, No. ED CV 26-00877 FMO (PD), 2026 WL 790879, at *1 n.1 (C.D. Cal. Mar. 16, 2026).

Also on April 24, 2024, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA"), charging him with removability under the Immigration and Nationality Act ("INA") section 212(a)(7)(A)(i)(I) as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act. (Dkt. No. 15-1 at 9.) Respondents found that Petitioner is not a flight risk and that he is not a danger to the community and released him from CBP custody. (Dkt. No. 1 at 3.) His first immigration court appearance after being paroled into the United States was set for eight months later, on December 9, 2024. (Dkt. No. 15-1 at 6-7; Dkt. No. 16 at 3.) Petitioner alleges he was not required to check in with Immigration and Customs Enforcement ("ICE"), nor did he have check-ins at the Intensive Supervision Appearance program ("ISAP"). (Dkt. No. 1 at 4.) He applied for asylum and Withholding of Removal and protection under the Convention Against Torture on November 22, 2024. *Id.* at 4.

On February 26, 2026, Petitioner was detained by local police for driving under the influence of alcohol ("DUI"). *Id.* He was released hours later, did not plead to any charge and was never convicted or sentenced.[2] *Id.* On

---

[2] Petitioner's supplemental briefing included a certificate from the Superior Court of California, County of Los Angeles, where the clerk checked the box stating "My search has disclosed 'NO CASE FILE' for the aforementioned name" between June 18, 2010, and July 09, 2026. (Dkt. No. 16 at 10.)

3

March 15, 2026, DHS issued a warrant for Petitioner's arrest. (Dkt. Nos. 10-1, 15-1.) Then on March 16, 2026, Petitioner was detained by ICE from his home in California. (Dkt. No. 1 at 5.) The form I-213 included with Respondents Answer states that Petitioner's ICE arrest on March 16, 2026, was "pursuant to his arrest for theft." Dkt. No. 10-1 at 3. However, in the Criminal History section on the form, there is no theft crime listed but there is a DUI Alcohol arrest charge listed. *Id.* at 4. It is unclear from the I-213 form what the basis was for his redetention as the form is inconsistent.

Petitioner argues that his redetention was without any notice that his parole was being revoked, no notice indicating an individualized determination was made nor any hearing to refute the purported reasons for revoking his parole. (Dkt. No. 1.) Respondents dispute this arguing his parole was terminated based on the changed circumstance of his recent arrest for DUI. (Dkt. No. 10 at 8.) They include the I-200 form where the Certificate of Service says the contents of the notice of arrest were read to Petitioner in English on March 16, 2026. (Dkt. No. 15-1, Ex. A.) Additionally, the Respondents include form I-286, Notice of Custody Determination. *Id.*, Ex. B. The document dated March 16, 2026, provides an option for the Petitioner to request a review of the custody determination by an immigration judge ("IJ"), which was checked "I Do." *Id.* Petitioner did not sign that form. *Id.* The form says that the contents of the notice were read to Petitioner in Armenian. *Id.*

Petitioner argues he did not receive any written communication regarding the reasons his parole was revoked, nor any written communications indicating an individualized determination or an opportunity to refute any reasons for revoking his parole.

On May 13, 2026, Petitioner filed this Writ of Habeas Corpus under 28 U.S.C § 2241, seeking an order requiring Respondents to release him from

4

immigration detention. *Id*. at 13. Petitioner argues Respondents detained him without notice and a hearing prior to re-detention thereby violating his due process rights. He seeks an order requiring Respondents to release him from immigration detention. (Dkt. No. 1.)

In their Answer, Respondents argue Petitioner's arrest is lawful and mandatory under 8 U.S.C. § 1225(b)(1) because he is an arriving alien and was apprehended at or near the border contemporaneous to his unlawful entry, and that alternatively his arrest is lawful under 8 U.S.C. § 1226(a) because he is currently in removal proceedings (Dkt. No. 10 at 8.) Respondents also argue Petitioner does not have any due process right to release or bond hearing after being detained under § 1225(b)(1). *Id*. For the reasons set forth below, the Court **GRANTS** the habeas petition.

### III.   PROCEDURAL HISTORY

Petitioner filed the instant habeas petition on May 13, 2026. (Dkt. No. 1.) The Court, on May 13, 2026, entered the Notice of General Order 26-05 and Briefing Schedule, directing Respondents to show cause why the writ of habeas corpus should not be granted and thereby adopting the standard procedures and briefing schedule under the General Order. (Dkt. No. 4.) Respondents filed their Answer on May 20, 2026. (Dkt. No. 10.) Petitioner filed his Reply on May 26, 2026. (Dkt No. 11.) Thus, the matter is fully briefed.

On May 18, 2026, Petitioner consented to proceed before Magistrate Judge for all proceedings in this case. (Dkt. No. 8.) The action has been fully consented to according to the General Order 26-05 and will proceed before a magistrate judge. (Dkt. No. 13.)

## IV.   DISCUSSION

The Court begins by addressing Respondents' argument that the Court lacks jurisdiction over Petitioner's claims. The Court then analyzes Petitioner's claims on the merits. For the reasons that follow, the Court concludes that Petitioner is entitled to release because the Government has violated his due process rights.

### A. The Court Does Not Lack Subject Matter Jurisdiction.

Petitioner seeks habeas relief pursuant to 28 U.S.C. § 2241. Section 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id.* (citing *INS v. St. Cyr*, 533 U.S. 289, 301–03 (2001)). Petitioner here advances a paradigmatic habeas claim—that his confinement by federal immigration authorities violates the Fifth Amendment right to Due Process, the Fourth Amendment, and the APA.

Respondents nonetheless argue that Congress stripped the federal courts' habeas jurisdiction over claims like Petitioner's through two provisions of the immigration laws, 8 U.S.C. §§ 1252(g) and 1252(b)(9). (Dkt. No. 10 at 15–18). However, as courts in this district have found, Respondents' arguments cannot be reconciled with Supreme Court and Ninth Circuit authority. *See, e.g., Hernandez Cruz v. Noem*, No. 8:25-cv-02566-SB-MAA, 2025 WL 3482630, at \*1-2 (C.D. Cal. Dec. 2, 2025); *Altamirano Ramos v. Lyons*, No. 2:25-cv-09785-SVW-AJR, 2025 WL 3199872, at \*2–3 (C.D. Cal. Nov. 12, 2025).

Section 1252(g) provides that "no court shall have jurisdiction to hear

any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders ..." 8 U.S.C. § 1252(g). "The Supreme Court has instructed that we should read § 1252(g) narrowly." *Ibarra-Perez v. United States*, 154 F.4th 989, 991 (9th Cir. 2025) (citing *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020)). Section 1252(g) thus applies only to "those three specific actions themselves." *Id.* at 996.

Respondents argue that Petitioner challenges these decisions. (Dkt. No. 10 at 16.) But the Supreme Court has refused to "interpret [Section 1252(g)'s] language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality) (citing *Reno v. American-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482–83 (1999)). Rather, it has construed Section 1252(g) to apply to the "particular evil" it was directed against: "attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9.

Petitioner's claims challenge his detention, not the Government's decision to commence, adjudicate, or execute a removal order. Rather, the crux of these claims take issue with the process Respondents have failed to afford him when they re-detained him. As such, Section 1252(g) does not apply.

Nor does Section 1252(b)(9) apply to Petitioner's habeas claims. Section 1252(b)(9) funnels "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken . . . to remove an alien" into the procedures for review of final orders of removal—namely, petitions for review in the circuit courts. 8 U.S.C. § 1252(b)(9). Consistent with its construction of Section 1252(g), the Supreme Court has rejected an "expansive interpretation of"

7

Section 1252(b)(9) that would apply to any claims that might conceivably "aris[e] from" immigration enforcement. *Jennings*, 583 U.S. at 293 (plurality). Among other problems, such an interpretation would render detention claims "effectively unreviewable" because, "[b]y the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place." *Id.* Accordingly, the Court has twice held that Section 1252(b)(9) does not apply to noncitizens' claims challenging their detention without a bond hearing. *Id.*; *Nielsen v. Preap*, 586 U.S. 392, 402 (2019).

Petitioners' claims—like those at issue in *Jennings* and *Preap*—do not seek review of an order of removal or challenge "the decision to detain them in the first place or to seek removal [as opposed to the decision to deny them bond hearings]." *Preap*, 586 U.S. at 402. Accordingly, Section 1252(b)(9) does not preclude this Court from considering Petitioner's claims.

The Court now turns to the merits of Petitioners' claims.

B. **Petitioner's Detention Violates Due Process.**

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id.* at 693–94. Freedom from physical restraint lies at the core of this protection. *See id.* at 690–91.

The Supreme Court has consistently held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or

property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). A growing body of decisions in this District and across the Ninth Circuit have found that immigration authorities violated or likely violated due process by re-detaining noncitizens who had been released shortly after their entry to the United States without notice or an opportunity to be heard. *See M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen who had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in). *See also Cruz v. Lyons,* No. 5:25-CV-02879-MCS-MBK, 2025 WL 4051129, at *1 (C.D. Cal. Nov. 6, 2025) (granting TRO ordering release of noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship and Immigration Services); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in). Only in limited situations have courts found that no deprivation hearing is required. *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (finding "absent evidence of urgent concerns," a *pre*-deprivation hearing is required to satisfy due process.")

In analyzing a procedural due process claim, the Court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge. Id*. at 1179–80. The *Mathews* framework considers: (1) the private interest at stake; (2) the

risk of erroneous deprivation; and (3) the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Mathews* is not a bright-line test but rather a flexible test depending on the different circumstances. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); *see also Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 589 (9th Cir. 1998). Here, the *Mathews* factors tip in favor of Petitioner.

### 1. *Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

Title 8 U.S.C. §§ 1225 and 1226 govern the detention of noncitizens. A detained noncitizen may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit," 8 U.S.C. § 1182(d)(5)(A), so long as the noncitizen is "neither a security risk nor a risk of absconding," 8 C.F.R § 212.5(b). *See also Kharb v. U.S. Dep't of Homeland Sec.*, No. 5:26-cv-00656, 2026 WL 485765, at *2 (C.D. Cal. Feb. 17, 2026) ("Release under [8 U.S.C. § 1182(d)(5)(A)] therefore 'reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.'") (quoting *Fernández López v. Wofford*, No. 1:25-cv-01226, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025)). This decision to release reflects an implicit promise from the government to the noncitizen that "'parole will be revoked only if he fails to live up to the parole conditions.'" *Dieng v. Hermosillo*, No. 2:26-cv-00190, 2026 WL 411857, at *5 (W.D. Wash. Feb. 13, 2026) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also id.* ("This Court reiterates that humanitarian parole can establish the same

kinds of liberty interests described in *Morrissey*."). Thus, when released on humanitarian parole, a noncitizen takes with him a liberty interest in remaining free from custody. *See Singh v. Bondi*, No. 2:26-cv-00582, 2026 WL 799706, at *5 (W.D. Wash. Mar. 23, 2026) (finding petitioner released on humanitarian parole had "protected liberty interest in remaining out of custody"). Due process entitles Petitioner to notice and an opportunity to be heard in the revocation of his § 1182 parole. *E.M.M.O. v. Wofford*, No. 1:26-CV-00585-DJC-CSK, 2026 WL 279894, at *2 (E.D. Cal. Feb. 3, 2026)

After an initial release from custody on conditions, even a person paroled following a conviction for a criminal offense for which they may lawfully have remained incarcerated has a protected liberty interest in that conditional release. *Morrissey* at 408 U.S. at 482. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases).

Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop...ties" in this country, "[his] constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see*

*also Yamataya v. Fisher,* 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Here, when ICE released Petitioner from custody on humanitarian parole after determining that he was not a danger nor a flight risk, it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process. *See Morrissey*, 408 U.S. at 482; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Moreover, as other courts have noted, a "petitioner's liberty interest [does] not expire along with his parole." *Quiroga-Chaparro v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-1731 AC, 2025 WL 3771473, at *4 (E.D. Cal. Dec. 31, 2025). Agency precedent likewise recognizes that a prior release should not be revoked absent materially changed circumstances. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018). Until he was re-detained in March 2026, Petitioner had spent his nearly two years in the United States released on the humanitarian parole. *Id*. Petitioner is entitled to at least those protections described above with respect to his protected liberty interest in remaining out of immigration custody.

2. ***Procedural Protections***

   **a) Private Interest**

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining his life out of custody. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi*

*v. Rumsfeld*, 542 U.S. 507, 529 (2004). While Petitioner has remained subject to humanitarian parole following his release in April 2024, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioners' release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey*, 408 U.S. at 482. This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

The Petitioner resided in the United States for about twenty-three (23) months before his re-detention. (Dkt. No. 16 at 13, Ex. D.) As his circumstances illustrate, a person can develop meaningful ties in such a relatively short period of time. Following his release from immigration custody, Petitioner has lived in the United States, filed for asylum, and received employment authorization. *See id*. While individuals apprehended shortly after entry in the United States may have "a lesser liberty interest" "at the margin" than other noncitizens who have resided in the United States for decades, "the same important interest is at stake—freedom from prolonged detention." *Diouf v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011), *overruled on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022).

Consistent with this conclusion, multiple courts, including the

undersigned Judge, have found that noncitizens developed protectable liberty interests in their release from immigration custody for periods comparable to those at issue here. *See, e.g.*, *Aperyan v. Semaia*, No. 5:26-CV-00699, 2026 WL 874734, at *6 (C.D. Cal. Mar. 27, 2026) (finding petitioner had resided in the United States for approximately a year and half before her recent re-detention amounted to a liberty interest); *Clene C. D. v. Robbins*, No. 1:25-CV-01463-KES-SKO, 2025 WL 3492118, at *5 (E.D. Cal. Dec. 4, 2025) (finding a petitioner had a constitutionally protected liberty interest in "eleven months she spent at liberty" following release under § 1226(a)); *Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to petitioner released for "over two years" under Section 1226(a)); *Pinchi*, 792 F. Supp. 3d at 1034 (same, for petitioner released "over two years" under Section 1226(a)); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–22 (W.D. Wash. 2025) (same, petitioner released for approximately 21 months under Section 1226(a)).

The Court therefore concludes that the Due Process Clause protects Petitioner's substantial liberty interest in maintaining his freedom from confinement.

### b) Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of his liberty interest absent a pre-detention hearing." *Cruz*, 2025 WL 4051129, at *4. The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas*, 533 U.S. at 699. But Petitioner has not been afforded any process to determine whether his detention in fact advances

14

either purpose.

The record suggests that Petitioner is not a flight risk or danger. Petitioner's initial release from custody "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioner was released on humanitarian parole. 8 C.F.R. § 212.5 allows for release on Parole "only on a case-by-case basis for "urgent humanitarian reasons" or "significant public benefit," provided the aliens present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5. "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Since his release, Petitioner has not given any reason to think that the Government's initial determination was in error. The only incident on Petitioner's record, an arrest, did not amount to charges being filed. The single arrest, alone, did not establish that Petitioner posed a danger to the community or a flight risk sufficient to justify immediate re-detention without proper process. In fact, it underscores the importance of providing Petitioner notice and a meaningful opportunity to be heard before depriving him of the liberty interest. As noted earlier, it is not clear by the documents provided to the Court what the changed circumstance was or what was the exact reason for revoking Petitioner's parole. Respondents' exhibits include a mention of a theft incident that triggered his arrest but the Criminal History section on the I-213 form mentions a DUI. (Dkt. No. 10-1 at 3–4.) This case squarely illustrates why pre-deprivation process is such an important right when a person has a protected liberty interest. When the Government's claimed

15

reason for redetention is uncertain, Petitioner is owed process of notice and a hearing so that he may challenge the purported reason for revoking his parole. Petitioner was entitled to due process in his parole revocation. In particular, "he was entitled to both notification of revocation and the reasoning for revocation, [and] an opportunity to be heard and contest the determination." *See also Noori v. LaRose*, 807 F. Supp. 3d 1146, 1165 (S.D. Cal. 2025).

Based on this record, the Court concludes that there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention.

### c) Government Interest

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously" released noncitizens like Petitioners "without a pre-detention hearing." *Cruz*, 2025 WL 4051129, at *4 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews,* 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

In sum, Petitioner has a strong interest in remaining free from

16

confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in his unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process.

## C. Petitioner's Remaining Claims

Because the Court concludes that Petitioner is entitled to release on due process grounds, it declines to address his alternative arguments including whether his detention violates the Fourth Amendment and the APA.

## V.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner, NAIRI GASPARYAN's (A #: 244-503-805) immediate release, subject to conditions of supervision that existed prior to his detention on March 16, 2026, along with the return of his personal belongings, including all of his identification, work permits, and other documentation, and preventing his re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government will bear the burden to prove by clear and convincing evidence that Petitioner is a danger to the community or a flight risk before Petitioner may be re-detained; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody.

Additionally, the Petitioner and the Court shall be provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

17

IT IS SO ORDERED.


Dated: July 27, 2026

_____
HON. ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE